# In the United States Court of Federal Claims

No. 11-275L
(Filed: January 11, 2019)

|  |  |  |
|---|---|---|
| BIG OAK FARMS, INC., et al., | ) | |
| | ) | Fifth Amendment Taking Claims; |
| Plaintiffs, | ) | Motion to Dismiss; 28 U.S.C. § 2501; |
| | ) | Time-barred; Relation Back; RCFC |
| v. | ) | 15(c); Class Action Tolling; RCFC |
| | ) | 12(b)(6). |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Benjamin D. Brown*, Washington, DC, and *J. Michael Ponder*, Cape Girardeau, MO, for plaintiff. *Laura Alexander*, Washington, DC, of counsel.

*Taylor Ferrell* and *Sean C. Duffy*, U.S. Department of Justice, Environmental and Natural Resources Division, Washington, DC, with whom was *Jean E. Williams*, Deputy Assistant Attorney General, for defendant. *Brigman Harman*, U.S. Department of Justice, Washington, DC, of counsel.

## OPINION

**FIRESTONE**, *Senior Judge.*

Pending before the court is the United States' (the "government") motion filed on

March 29, 2018 (ECF No. 125) to dismiss the claims of over 120 plaintiffs (hereinafter

"additional plaintiffs") on the grounds that their claims, identified for the first time in the

Third Amended Complaint filed on March 16, 2018 (ECF No. 121),[1] are time-barred

under 28 U.S.C. § 2501.[2]

This case was initially filed on May 3, 2011 (ECF No. 1) on behalf of 34 plaintiffs

and an unidentified class of additional plaintiffs. In the original complaint, the plaintiffs

claimed that they were bringing the action on behalf of themselves and an alleged class

following flooding that began "at approximately 10 p.m. on May 2, 2011" when the

United States Army Corps of Engineers ("the Corps") "intentionally breached the Birds

Point levee . . . and inundated approximately 130,000 acres of Mississippi and New

Madrid Counties, Missouri with flood waters from the Mississippi River." Compl. ¶ 20.

Some of the original 34 plaintiffs had granted easements to the Corps to allow for their

land to be flooded during certain conditions and received payments for their easement.

The plaintiffs who had granted these easements to the Corps also alleged that, to the

extent the easements were enforceable, that the Corps had exceeded the scope of its

easements. Amend. Compl. ¶¶ 95-102 (ECF No. 32).

The government moved to dismiss the takings claims set forth in the initial March

3, 2011 complaint on September 9, 2011 for failure to state a claim upon which relief can

be granted (ECF No. 19) under Rule 12(b)(6) of the Rules of the United States Court of

---

[1] On April 23, 2012, the plaintiffs filed a second amended complaint (ECF No. 32). On March 16, 2018, the plaintiffs filed their third amended complaint, but improperly filed and titled it as their second amended complaint (ECF No. 121). Thus, the court will refer to the March 16, 2018 complaint as the Third Amended Complaint.

[2] "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

Federal Claims ("RCFC 12(b)(6)"). On May 4, 2012, the court granted the government's motion to dismiss the plaintiffs' takings claims (ECF No. 35). However, shortly thereafter the Supreme Court issued its decision in *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23 (2012) and after additional briefing on the Supreme Court's decision, the court reinstated the plaintiffs' takings claims on July 23, 2013 (ECF No. 61) and the parties began discovery.

After fact discovery was completed in 2016, the parties filed cross-motions for partial summary judgment on plaintiffs' taking claims (ECF Nos. 100, 101). The court denied summary judgment on March 17, 2017 stating that there were disputed issues of fact regarding whether the property damage suffered from activation of the Floodway was the same as would have occurred had the government not breached the levee or, if the flooding was greater than would have occurred without the breached levee, whether the benefits the plaintiffs have received from operation of the levee system outweighed the harm caused by the breach of the Birds Point Levee. *Big Oak Farms, Inc. v. United States*, 131 Fed. Cl. 45, 54 (2017).

In a joint status report filed on November 21, 2017 (ECF No. 120), the plaintiffs informed the court that despite having earlier agreed to seek class certification after the court's ruling on summary judgment, the plaintiffs decided not to seek class certification. Instead, the plaintiffs informed the court that they had decided to amend their complaint to remove the request for class certification and instead to amend their complaint to name additional individual plaintiffs. On March 16, 2018, plaintiffs filed what is now their Third Amended Complaint (ECF No. 122). The Third Amended Complaint includes the

3

claims of the original plaintiffs as set forth in the Second Amended complaint but does not include allegations to support a class action and now also adds the claims of over 120 additional parties seeking just compensation under the Fifth Amendment based on the Corps' breach of the Birds Point Levee on May 2, 2011.

On April 27, 2018, the government filed the pending motion to dismiss the claims of the additional plaintiffs for lack of subject matter jurisdiction under RCFC 12(b)(1) on the grounds that the additional plaintiffs' claims, which were filed more than six years after the Corps breached the Birds Point levee, are barred by the six-year statute of limitations in 28 U.S.C. § 2501 (ECF No. 125). The plaintiffs argue in response that the claims of the added plaintiffs relate back to the original complaint filed on May 3, 2011 under RCFC 15(c)(1)(B).[3] The plaintiffs also argue that because the initial complaint included allegations regarding a claim for a class action, the statute of limitations was tolled for the period of time the plaintiffs had maintained a claim for class certification and thus the claims of the additional plaintiffs are timely.

For the reasons that follow, the court finds that the claims of the additional plaintiffs do not relate back to the original May 3, 2011 complaint and that a claim for a class action does not toll the statute of limitations where, as here, the court has never ruled on or has been asked to rule on class certification. Therefore, the court **GRANTS**

---

[3] "[A]n amendment of a complaint relates back to the date of the original complaint when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." RCFC 15(c)(1)(B).

the government's motion to dismiss the claims of the additional plaintiffs first named in the Third Amended Complaint on the grounds that their claims are time-barred.

## I.    FACTUAL BACKGROUND

The facts surrounding the breach of the Birds Point Levee which gave rise to this case can be found at this court's opinion in *Big Oak Farms, Inc. v. United States*, 131 Fed. Cl. 45 (2017) denying summary judgment and will not be repeated here. Set forth below are the facts from the original, First, Second, and Third Amended complaints that the additional plaintiffs rely on in support of their contention that the court has jurisdiction to hear their claims. These facts are deemed true unless otherwise noted.

As noted above, 34 plaintiffs filed a Class Action complaint on May 3, 2011, stating that the action was being brought "on Behalf of a Class consisting of: all persons and entities who owned property in the affected Birds Point New Madrid County Floodway at the time the levee was breached" and that "[t]he Class is so numerous a joinder of the individual members of the proposed Class is impracticable." Compl. ¶¶ 45-56. In the initial complaint, the plaintiffs identified 34 plaintiffs. *Id.* ¶ 2-16.[4]

---

[4] The plaintiffs named in the Second Amended Complaint as listed in its caption are: Big Oak Farms, Inc.; Mt. Level Farms, Co., Inc.; Stallings Brothers Farms; Burke Land Co.; Emmitt Burke, Individually; Brad Hequembourg Farms; Brad and Susan Hequembourg, Individually; Terry and Judy Hequembourg, Individually; Wolf Island Farms, Inc.; Mark and Rebecca Dugan, Individually; M & M AG Farms, Investments; Mike Hutcheson and Marty Hutcheson, Individually; Jennifer T. Baker Trust; Lindsay and Monica Goodin, Individually; John and Clyda Goodin, Individually; Stephen and Janette Story Farms, Inc.; Shew & Presson Farms, Inc.; Roy Presson, Individually; Ray Presson, Individually; Jack Feezor, Individually; The Orvil Shew Marital Trust; Story Farms, Inc.; Story Land, Inc.; Sunburst Plantation, Inc.; Lester Goodin and Janet Goodin, Individually; Consolidated Drainage District No. 1 of Mississippi County, Missouri; Dee Goodin, Individually. In its initial complaint, Consolidated Drainage District No. 1 of Mississippi County, Missouri was not listed as a plaintiff.

On July 11, 2011, the plaintiffs filed an amended Class Action complaint (ECF No. 8). In that amended complaint, the plaintiffs expanded their class action allegations to include:

> All persons and entities who owned and/or leased real and/or personal property and/or who owned business in the Birds Point-New Madrid Floodway that were damaged or destroyed by floodwaters pursuant to Defendant's operation of the Floodway on May 2, 2011. Excluded from the Class are Defendant, Defendant's officers, legal representatives, and assigns.

Amend. Compl. ¶ 66.

The amended complaint further stated that the action was being brought "as a class action because, upon information and belief, the Class includes hundreds if not thousands of members[.]" *Id.* ¶ 67. In that same amended complaint, plaintiffs alleged that "[a]ll Plaintiffs own real property within the Birds Point-New Madrid Floodway. . . ." *Id.* ¶ 31. The amended complaint also included a fact that "[a]pproximately 90 residences were destroyed by the intentional breaches of the levee and subsequent flooding." *Id.* ¶ 60.

Plaintiffs filed a Second Amended Complaint on April 17, 2012 (ECF No. 31) but did not change any of the named plaintiffs or allegations regarding the nature of alleged class.[5] The parties filed a Joint Preliminary Status Report ("JPSR") on August 9, 2012 (ECF No. 40), in which they agreed that "[i]f members of the putative class wish to proceed in this case as named plaintiffs rather than absent class members, such elections

---

[5] The Second Amended Complaint was brought by Big Oak Farms, Inc. and included the same 33 plaintiffs, with the addition of Consolidated Drainage District No. 1 of Mississippi County, Missouri, and was filed on behalf of a proposed class of persons or entities that owned land or business within the floodway. The aforementioned sections quoted from the amended complaint remained the same.

[needed to] be made by February 15, 2013." JPSR at 2. The parties further agreed that they planned to "make a proposal to the Court regarding the schedule for . . . briefing regarding class certification" after the court ruled on the parties' cross-motions for summary judgment under RCFC 56. *Id.* at 5.

On April 28, 2017, after the court denied the cross-motions for summary judgment, the government filed a joint proposed schedule (ECF No. 116) which stated that because "this is a complicated case due to the numerous properties involved . . . fact discovery will require a significant amount of time." The parties proposed that plaintiffs submit their motion for class certification on September 22, 2017. *Id.* The court adopted the proposed schedule on May 30, 2017, (ECF No. 117). On September 21, 2017, the parties filed a joint motion to extend the deadline for class certification for 60 days (ECF No. 118).[6] The court adopted the extension in a scheduling order the next day (ECF No. 119).

On November 21, 2017, the parties filed a joint status report ("JSR") (ECF No. 120) in which the plaintiffs elected not to seek certification of a class but to instead proceed with only individual claims. The status report stated that the "[p]laintiffs have elected not to seek to certify a class or multiple subclasses in this action," and "[i]nstead, [the plaintiffs] will be proceeding with non-class claims." JSR at 1. Further, the JSR

---

[6] That motion explained that the parties were conferring about "whether a class action is the best vehicle for resolving the Plaintiffs' claims or whether other procedural avenues might be more efficient" and that the extension would "allow the parties to more fully consider the complexities of this case and the best manner in which to address them before burdening this Court with a class certification motion." *Id.*

indicated that the "[p]laintiffs will be filing an amended complaint in coming weeks to

reflect the absence of class claims. This amended complaint may or may not reflect the

explicit addition of previously unnamed class members who wish to proceed in the

litigation in light of the fact that their claims will not be pursued in a class action." *Id.* In

that same JSR, the government "indicated that [the government] will move to dismiss any

such claims as time-barred." *Id.*

Four months later, the plaintiffs filed a motion for leave to file the Third Amended

Complaint on March 16, 2018 (ECF No. 121). Pls.' Mot. for Leave to File Second Am.

Compl. & Mem. In Supp. ("Mot. for Leave"). Plaintiffs asserted that "absent class

members" were coming forward "to convert their claims from class claims to individual

claims . . . ." Mot. for Leave at 1. The Third Amended Complaint identified 123

additional plaintiffs and removed all references to class action claims in the complaint.

*Id.*, Ex. 1.[7] The United States did not oppose the motion to amend but alerted the court of

---

[7] The Third Amended Complaint did not include nine of the plaintiffs named in the Second
Amended Complaint. Those nine plaintiffs are M & M Ag Farms Investments; Story Land, Inc;
Sunburst Planation, Inc; Emmitt Burke; Judy Hequembourg; Lester Goodin; Janet Goodin; and
Dee Goodin. Therefore, only 25 plaintiffs included in the Second Amended Complaint were also
identified in the Third Amended Complaint (hereinafter "original 25 plaintiffs"). The additional
plaintiffs first identified in the Third Amended Complaint: Preston Adams, Brent Adams and
Valarie Adams Smith; Larry and Cathy Allred; John and Joyce Anderson; Bayou Du Chein,
LLC; Roland and Carolyn Ashby; Sam G. Austin; Charles and Leslie Babb; Five Star Farms,
Inc.; Daniel J. Babb Farms; Jackie L. and Paula F. Barker Trust; Abner M. Beck Living Trust
and Julia R. Beck Living Trust; Joe and Dora Brown; Fred and Cheryl Bryant; Fred Bryant Inc.;
Susan H. Bryant; J Bryant, Inc.; Michael Bryant; Bryant Farms Inc.; Mildred Burnett; Carol A.
and Ronnie L. Butler; Jeffrey D. Byrne; Nita S. Byrne; Richard Crawford; Rodney Crawfod;
James M. Cullison Family Trust; William and Pam Deline; Deline Farms Partnership; Brian Dill
Farms; William D. and Ginger Dill; William C. and Laverne Dunn; William Feezor for B & F
Farms, Inc.; Alice B. Fox Family Trust; Leslie S. Fox Living Trust; Leslie Fox Farms, L.P.; Jay
and Lucille Frazier; Leonard Gallion; Albert Goodin; R. E. Lee Goodin; Goodin Farms; Goodin
Land Co.; Robert and Sharon Henry; Terry Hequembourg; Thomson Heirs; Amos Frank and

its intention "to separately move to dismiss the claims brought by the newly-identified plaintiffs for the first time in the proposed amended complaint on the basis that those claims are barred by the applicable statute of limitations." Joint Mot. to Amend Schedule ¶ 1, ECF No. 123.

The Third Amended Complaint stated that the "actions are properly brought and litigated together and relate back to the initial complaint in this matter because certain questions of law or fact are common to all plaintiffs and have been put at issue since the initial complaint in this matter. . . ." Third Am. Compl. ¶ 187.

---

Elizabeth Higgerson; Glenn M. Hillhouse Farms, Inc.; Hillhouse Farms, Inc.; Hillhouse Family, LLC; Col. David K. Holland Revocable Living Trust; Claire M. Holland; Claire M. Holland Revocable Living Trust; Nancy N. Holland Revocable Living Trust; David K. Holland Jr. and Jennifer Kalfsbeek, Holland/Kalfsbeek Joint Revocable Living Trust; Mary Hough; Hunter Padberg, LLC; Jon and Tammi Hutcheson; MKH Farms, LLC; Joe Hutchison; Jenita B. Jones; McIvan Jones; Jones Family Farms; McIvan Jones Farms, Inc.; Michael Kemp; Michael Kemp Inc.; Mary Beth Lee & Phyllis Aduddell; Terry and Mary Beth Lee; Abbie Story LeFevre; Alan Long and Gary Long; Carolyn Luebke; Marshall Affiliates, Inc.; Arthur Mattingly for Virginia Dare Farms, Inc.; Stanley D. May; Laura B. Meek for Janet Bondurant Q-tip Trust; Louis Miller for Ringo Farms Corp.; Michael and Janet Bogle Monk; James C. Moreton Living Trust and Eleanor P. Moreton Living Trust; John C. and Nancy E. Moreton; Moreton Farms, Inc.; Moreton Farms, Inc.; Moreton Partnership; Robert and Donna Morgan; Moxley Farms, Inc.; E. Moxley, Inc.; P & J Moxley Farms, LLC; Kevin S. and Jonell L. Nally; D. Lowell and Joan J. Nally; Marilyn Nally; Joe Oliver and David Oliver for Bur Oak Farms; Robert and Gloria Osborn; Scott Peters; JSP Farms; Albert Peters; Pinhook Hunting Club, LLC; Pinhook Hunting Club Properties, LLC; John L. and Sammie L. Ponder; Catherine Presson; Daisy R. Reeves and Florence Canepari; O.A. Reeves Trust; David and Marilyn Renaud; Lindsay Camp Ringo, Sr.; Mary Katherine Servatius Family Trust; Roy and Barbara Smith; Bart Stallings; Jeff Stallings; JBS Farms, Inc.; Bart & Jeff Stallings Farms; Martin Stallings; A.L. Story, Inc.; ABC Farms, Inc.; Ernest Story; Shelby Story; Stephen and Karen Story; Ernest Tate; Neal Tinnon; Milus and Wanda Wallace; Mary Ellen Weaver and Gene R. McClay; Gene R. McClay Revocable Living Trust; White Oaks Ranch, L.P.; C. David Williams; Donald Williams Farms, Inc.; Donald Williams; Donald Williams Living Trust; Elizabeth Williamson Trust; John R. Wilson.

## II.    LEGAL STANDARDS

The standards upon which motions to dismiss for lack of subject matter jurisdiction can be granted are well-settled. "Whether this court has subject matter jurisdiction is a threshold matter, and, if no jurisdiction exists, the Court must order dismissal without further proceedings." *Vanquish Worldwide, LLC v. United States*, 134 Fed. Cl. 72, 76 (2017) (citing *PODS, Inc. v. Porta Stor. Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007). The plaintiff has to establish the court's subject matter jurisdiction "by a preponderance of the evidence." *Fid. & Guard. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015) (citing *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013)). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). However, if the factual allegations in the complaint supporting jurisdiction are challenged only the uncontroverted factual allegations are accepted as true. *Id.* (citations omitted). Additionally, the court can "look beyond the pleadings and 'inquire into jurisdictional facts' to determine whether jurisdiction exists." *BRC Lease Co. v. United States*, 93 Fed. Cl. 67, 71 (2010) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).

Claims under the Tucker Act are subject to the six-year statute of limitations set forth in 28 U.S.C. § 2501. "A claim under the Tucker Act accrues as soon as all the events have occurred that are necessary to enable plaintiff to bring suit." *Fredericksburg*

*Non-Profit Housing Corp. v. United States*, 113 Fed. Cl. 244, 252 (2013) (citing *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006)). "As a matter of law, a takings claim accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *CRV Enters., Inc. v. United States*, 86 Fed. Cl. 758, 769 (2009) (internal quotations and alterations omitted) (quoting *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355-56 (Fed. Cir. 2006), *aff'd* 552 U.S. 130 (2008)), *aff'd*, 626 F.3d 1241 (Fed. Cir. 2010).

The statute of limitations set in 28 U.S.C. § 2501 is jurisdictional. *John R. Sand & Gravel Co.*, 552 U.S. at 133. Rather than protecting "a defendant's case-specific interest in timeliness," a jurisdictional statute of limitations works "to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a government waiver of sovereign immunity, or promoting judicial efficiency[.]" *Id.* (citations omitted). Jurisdictional statutes of limitations require "a court to decide a timeliness question despite a waiver" and "forbid[] a court to consider whether certain equitable considerations warrant extending a limitations period." *Id.* at 134. Thus, "equitable tolling and estoppel do not extend the six-year statute of limitations embedded in U.S.C. § 2501." *CRV Enters.*, 86 Fed. Cl. at 769 (citation omitted).

## III.   DISCUSSION

The government argues that the claims of the additional plaintiffs first identified in the Third Amended Complaint must be dismissed from the action for lack of jurisdiction because the claims of these plaintiffs were filed more than six years after the breach of the Birds Pointe levee on May 2, 2011 and are thus time-barred under 28 U.S.C. § 2501.

The plaintiffs do not dispute that the claims of the additional plaintiffs have been filed

outside the six-year statute of limitations set under 28 U.S.C. § 2501 but argue that the

claims relate back to the original complaint under RCFC 15(c) and are therefore timely.

In the alternative they argue the claims are timely because the statute of limitations was

tolled while plaintiffs were seeking class action status under the Federal Circuit's holding

in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010). Both of the plaintiffs'

contentions are examined below in turn.

### A.     The Additional Plaintiffs' Claims Do Not Relate Back Under RCFC 15(c)

RCFC 15(c)(1)(B) provides that "an amendment of a complaint relates back to the

date of the original complaint when . . . the amendment asserts a claim or defense that

arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—

in the original pleading." The Federal Circuit has allowed RCFC 15(c) to "overcome the

government's challenge based upon the six-year statute of limitations[,]" when the claim

"sufficiently relates back to [the] original complaint." *Barron Bancshires, Inc. v. United

States*, 366 F.3d 1360, 1370 (Fed. Cir. 2004); *see also Snoqualmie Tribe of Indians ex

rel. Skykomish Tribe of Indians v. United States*, 178 Ct. Cl. 570, 588 (1967) (finding that

the additional claim was "sufficiently closely related" to apply the relation back

doctrine).

In deciding whether an amended complaint adding additional plaintiffs sufficiently

relates back, this court generally applies a four-factor test. *See Holland v. United States*,

62 Fed. Cl. 395, 407-8 (2004).[8] Under this test, relation back is favored where 1) the claim arose out of the 'same conduct, transaction, or occurrence' as the original complaint; 2) the new plaintiff shares an 'identity of interest' with the original plaintiff; 3) the defendant had 'fair notice' of the new plaintiff's claim; and 4) the addition of the new plaintiff causes the defendant prejudice. These factors overlap to some degree, however, each factor will be individually examined below.

Whether the additional claims arise out of the same conduct, transaction, or occurrence for purposes of relation back turns on an examination of the government actions giving rise to the plaintiffs' claims. The government concedes that "the claims of the new landowners arise out of the same event" but argue that "there are distinct transactions that give rise" to each of the plaintiffs' claims. Def.'s Mot. to Dismiss at 10. In making this argument the government states that "because a taking analysis will require an evaluation of the particular property interests pertaining to each parcel,

---

[8] The Federal Circuit has not had occasion to rule on this four-factor test, but these same factors are relied upon in other circuits including the D.C. Circuit. *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C. Cir. 1982) (We find persuasive the . . . need to limit relation back of claims asserted by additional plaintiffs in some way beyond the 'conduct, transaction, or occurrence' test that applies to relation back of amendments generally. Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed"); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996) (finding that a change relates back "only when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff"); *Bayatfshar v. Aeronautical Radio, Inc.*, 934 F. Supp. 2d 138, 144 (D.D.C. 2013). Notably, some circuits do not permit adding additional plaintiffs under Rule 15(c) after the statute of limitations. *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("The precedent of this circuit clearly holds that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations") (citation omitted).

including the existence and terms of flowage easements," each claim contains distinct evidentiary concerns. *Id.* at 10-11. Plaintiffs respond that "[t]here is not a *single* allegation of conduct that differs between the initial Complaint and the Third Amended Complaint, nor are there descriptions of any additional – or any fewer – transactions or occurrences described in the Third Amended Complaint that were not present in the original pleading." Pls.' Resp. at 9-10. The plaintiffs argue that all of the flooding at issue in this case arises from the Corps' breach of the Birds Point Levee on a single day, May 2, 2011.

The court agrees with the plaintiff that the takings claims arose from the same action or event – the Corps' breach of the Birds Point Levee. The government is also correct that the takings claims of each individual property owner are different. However, the fact that the takings claims of each property owner is different and that each will have to establish their own taking claim under the multi-factor test established for temporary takings in *Arkansas Game and Fish Comm'n v. United States*, 568 U.S. 23 38-39 (2012) does not mean that the underlying government action giving rise to the taking is different for each plaintiff in this case. The court thus finds that this factor weighs in the additional plaintiffs' favor.

Whether the additional plaintiffs share an identity of interest with the original plaintiffs presents a more difficult issue. The government argues based on prior precedent that to meet this criteria, the additional plaintiffs and original plaintiffs must be essentially one in the same in order to satisfy this factor test. *Snoqualmie Tribe*, 178 Ct. Cl. at 588; *Nielsen v. Prof'l Fin. Mgmt., LTD.*, 682 F. Supp. 429 (D. Minn. 1987). The

plaintiffs argue, in response, that the identity of interest factor is concerned primarily with "notice" and whether the claims of the old and additional plaintiffs are sufficiently related that the government understood that additional plaintiffs also had takings claims arising from the same event. The court finds that both parties have over-stated their positions and that the identity of interest factor is intended to ensure that the old and additional plaintiffs are sufficiently related such that the claims of the additional plaintiffs were in effect part of the litigation from the outset of the litigation.

In this regard, the plaintiffs argue that because the case was initially filed as a class action that the additional plaintiffs' claims were in effect part of the litigation from the outset. The government argues this is not true because the takings claims of the old and additional plaintiffs while based on the same event are inherently different and are not the same for each. According to the government, each plaintiff will need to establish that the temporary flooding of his or her property amounts to a taking. As such, the government argues the takings claims of the additional plaintiffs were not before the court at the outset of the litigation.

The court agrees with the government that it is not enough to have identified a potential class of persons with property that was flooded by the same event to meet the "identify of interest" test. Different from other class actions where perhaps all of the class plaintiffs suffer the same injury from the same event, in this case, there is no basis to conclude that each of the additional plaintiffs suffered the same level of temporary flooding that the original plaintiffs endured. Whether the additional plaintiffs can establish a takings claim will turn on their individual circumstances, as the Supreme

Court explained in *Arkansas Game and Fish*, the duration and severity of the flooding must be assessed on a case by case basis along with the character of the land at issue and the landowner's reasonable investment expectations. 568 U.S. at 38-39. Put another way, while the flooding may have been caused by a single event, each plaintiff will have to establish the government's liability for an individual temporary taking based on their own unique factual circumstances. For similar reasons, this court in another flooding takings case held that plaintiffs who sought to join the litigation after the statute of limitations had passed had filed too late because the "geographic proximity of a discrete parcel of land to property owned by plaintiffs asserting a takings claim is not enough" to satisfy the identify of interest test for purposes of RCFC 15(c). *Creppel v. United States*, 33 Fed. Cl. 590, 596 (1995). The court finds that the reasoning in *Creppel* is applicable to this case and that regardless of whether the government understood that other landowners may also have been flooded by the breach of the Birds Pointe Levee, the additional plaintiffs have not shown that their claims for a temporary taking are sufficiently similar to the takings claims brought by the plaintiffs identified in the Second Amended Complaint that their claims were effectively before the court such that the additional plaintiffs can meet the identity of interest test.

Regarding the third factor – whether the defendant had fair notice of the additional plaintiffs' claims – the court finds, for essentially the same reasons as discussed above, that this factor weighs against permitting the additional plaintiffs' claims to relate back to the original complaint. While it is true that the government was on notice that the original plaintiffs planned to seek class certification on behalf of potentially "thousands" of other

16

landowners who had property flooded by the breach of the Birds Pointe Levee, the court agrees with the government that "mere reference to a class action in the original complaint did not apprise the United States of the identity of the new claimants that would assert takings claims, nor of any property-specific facts related to their takings claims." Def.'s Mot. to Dismiss at 10. Rule 15(c) requires more than notice of a potential class to establish notice of individual plaintiff claims.

In the Second Amended Complaint (ECF No. 32), filed before the statute of limitations had run, the plaintiffs described the class as follows: "All persons and entities who owned and/or leased real and/or personal property and/or who owned business in the Birds Point-New Madrid Floodway that were damaged or destroyed by floodwaters pursuant to Defendant's operation of the Floodway on May 2, 2011." Sec. Amend. Compl. ¶ 66. This description did not put the government on notice of any specific location, property interest, or the damage to property for any of the newly named plaintiffs under the standards set in *Arkansas Game and Fish*. Had the plaintiffs identified with some precision the facts giving rise to the temporary takings claims for various categories of landowners under the *Arkansas Game and Fish* criteria perhaps the Second Amended Complaint would have given the government fair notice of the additional plaintiffs' claims. However, this is not the case. As discussed above, because *Arkansas Game and Fish* establishes a multi-factor test that must be satisfied on a case-by-case basis to establish liability for a temporary taking, something more than notice that many property owners were affected by flooding is required to meet the notice of the claim criteria.  For these reasons, the court finds that the government did not have fair notice of

17

the additional plaintiffs' claims before the statute of limitations expired to satisfy RCFC 15(c).

Finally, as to whether adding the additional plaintiffs' claims will cause the defendant prejudice the court finds as follows. "Undue prejudice may be found when an amended pleading would cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." *Cooke v. United States*, 79 Fed. Cl. 741, 742-43 (2007) (citation omitted). The government argues that adding over 100 additional claimants would lead to "potentially significant expansion of discovery." Def.'s Mot. to Dismiss at 11. The plaintiffs respond that "the newly-named Plaintiffs are indeed all persons or entities who owned property in the affected floodway" so "no undue prejudice could possibly result from relation back." Pls.' Resp. at 17. Plaintiffs further argue that the additional plaintiffs' claims "would not be subject to detailed discovery for some time" and "each scheduling proposal in this case has explicitly addressed the timing and mechanisms for resolving these claims." *Id.*

The court again agrees with the government that allowing relation back to include 123 more plaintiffs would be prejudicial to the government in this case. Increasing the number of plaintiffs by over 100 creates a clear litigation burden particularly given the years that have passed and the proof required to prove impacts to property more than seven years after the flooding in 2011. Accordingly, this factor also weighs against allowing for relation back of the additional 123 plaintiffs' claims.

In sum, for the reasons stated above, the court finds that the majority of factors for allowing relation back weigh against plaintiffs and thus the court finds that the claims of

the additional plaintiffs first identified in the Third Amended Complaint are barred by the statute of limitations in 28 U.S.C. § 2501 unless tolling of the statute of limitations applies.

### B.   The Class Action Tolling Doctrine Does Not Apply Here Where Plaintiffs Failed to File a Motion and Receive a Ruling On Class Certification

The Federal Circuit has allowed for tolling of the statute of limitations in 28 U.S.C. § 2501 under certain circumstances involving class actions. *See Bright v. United States*, 603 F.3d 1273, 1285 (2010).[9] In *Bright*, the plaintiff, in a takings case, had filed a class action complaint and sought class certification before the statute of limitations had run, but class members did not have the opportunity to opt in until after the statute of limitations had run. *Id.* at 1277. In allowing for tolling in that circumstance, the Federal Circuit held that "when class certification is sought prior to the expiration of [section 2501's limitations] period, but the complaint is not amended to add other named plaintiffs as putative class members until after the expiration of the period . . . [t]he statute of limitations is tolled during the period the Court of Federal Claims allows putative class

---

[9] There is no question that the Tucker Act's statute of limitations at 28 U.S.C. § 2501 cannot be tolled equitably by this court. In *John R. Sand & Gravel Co.*, the Supreme Court stated that Section 2501 was jurisdictional in that it "seek[s] to achieve a broader system-related goal, such as . . . limiting the scope of a governmental waiver of sovereign immunity." 552 U.S. at 133. The Supreme Court later clarified that it has "repeatedly held that [the Tucker Act's] 6-year limit [is] jurisdictional and thus not subject to equitable tolling." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1634 (2015). The Federal Circuit stated that "the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling is also barred. The two concepts are different." *Bright*, 603 F.3d at 1287. The Federal Circuit distinguished equitable tolling which "permits courts to modify a statutory time limit" from class actions where courts do "not modify a statutory time limit" but "suspend[] or toll[] the running of the limitations period for all purported members of a class once a class suit has commenced." *Id.* at 1287-88.

members to opt in to the class." *Id.* at 1290. In allowing for tolling under the factual

circumstance in *Bright*, the Federal Circuit left unanswered the question "of whether

tolling would be allowed where a class certification was sought after the limitations

period." *Id.* at 1290 n9. The Federal Circuit also had no occasion to consider the issue

presented here, i.e. whether tolling is allowed where the original plaintiffs never sought

class certification and then after the statute of limitations had run voluntarily amended

their complaint to remove the request for class certification and instead added plaintiffs to

the complaint as though they were "opting into" a case where class certification was

granted.

The plaintiffs argue that this court should treat the additional plaintiffs like the

plaintiffs allowed to opt in to *Bright* and allow for tolling because the plaintiffs in this

case originally requested class certification in the prayer of relief of their Second

Amended Complaint. Pls.' Resp. at 23. The plaintiffs requested that "the Court issue an

appropriate Order certifying the Class pursuant to the Court's Rule 23, designating the

named Plaintiffs as the representatives for such Class, and appointing Plaintiffs' counsel

as counsel for the Class.").[10] Sec. Am. Compl. at 20 ¶ 1. According to the plaintiffs, the

statute of limitations was tolled until the request for certification in the prayer for relief

was abandoned in the Third Amended complaint when the additional plaintiffs joined the

lawsuit.

---

[10] "At an early practicable time after a person sues as a class representative, the court must
determine by order whether to certify the action as a class action." RCFC 23(c)(1)(A).

The government argues that plaintiffs' reliance on *Bright* is misplaced because *Bright* only allows for tolling where class certification is granted and time is needed, after the limitations period has passed, to allow members of the class to join the case as parties under the court's opt in class action procedure.[11] Here, the government explains, the plaintiffs never sought class certification and when they abandoned their request for class status after the statute of limitations had expired, they relinquished their tolling claim.

The court agrees with the government that *Bright* does not allow for tolling in this case. Had the plaintiffs in this case timely sought a ruling on class certification and the court had granted certification, they could rely on *Bright*. However, the plaintiffs did not follow the court's class action procedure in this case and thus *Bright* does not apply.

The plaintiffs argue that by filing a complaint which contains class claims and a request for class certification in the prayer for relief that the rationale that supported tolling in *Bright* should be extended to apply in this case. In support of their argument, the plaintiffs cite two cases where this court permitted class tolling where the motion for class certification was submitted after the statute of limitations had expired. Pls.' Resp. at 22 (citing *Geneva Rock Products, Inc. v. United States*, 100 Fed. Cl. 778 (2011) and *Toscano v. United States*, 98 Fed. Cl. 152 (2011)). Plaintiffs argue that so long as there was a request for class certification in the complaint pending before the court, tolling should be allowed.

---

[11] The government argues following the Supreme Court's ruling in *California Public Employees' Retirement System ("CalPERS") v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017), that *Bright* may no longer be good law. Because the court agrees with the government that *Bright* does not authorize tolling in this case, it has no occasion to rule on whether *Bright* remains good law.

The government argues that plaintiffs' argument conflicts with the express holding in *Bright* which rejected the "contention that the filing of the original complaint satisfied the limitations requirement of section 2501 outright for all putative members of the class." *Bright*, 603 F.3d at 1283. The holding in *Bright*, the government argues, extends only to cases where there was a motion and ruling on class certification.

The court agrees with the government. Whereas here the plaintiffs never moved for ruling on their request for class certification in their prayer for relief, there was nothing more than a class complaint pending before the court and under the holding in *Bright* a class complaint is not sufficient to toll the statute of limitations. If by simply filing a class action complaint a party could unilaterally toll the statute of limitations and then have new parties join the litigation as though the new parties were opting into a class action without any court ruling on class certification, why would any party seek class certification before this court. Plaintiffs' approach, if adopted, would create a major jurisdictional loophole and is thus rejected.[12]

## CONCLUSION

For the forgoing reasons, the government's motion to dismiss the additional plaintiffs' claims first listed in the Third Amended Complaint as time-barred under RCFC 12(b)(1) is **GRANTED**. The parties shall file a proposed draft order dismissing the additional plaintiffs whose claims are time-barred by the statute of limitations and file a

---

[12] As discussed at the oral argument, the statute of limitations problem in this case is a problem of the plaintiffs' own making. The plaintiffs were aware of *Bright* and the limits of its holding and had more than enough time to file an appropriate motion for class certification.

joint status report proposing a schedule for next steps for resolving the litigation. The plaintiff shall also file a Fifth Amended Complaint that reflects the court's ruling in this opinion and identifies the remaining plaintiffs. The aforementioned draft order, joint status report, and amended complaint shall be filed by **January 18, 2019**.

     **IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge